UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

ISAAC BRIGGS III,

           Defendant.

23-CR-644-1 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

After entering a guilty plea with the assistance of a federal defender, Defendant Isaac Briggs III's counsel in related civil cases, Elaine Platt, appeared in this action to represent Mr. Briggs and moved to vacate his guilty plea. There appear to be multiple conflicts or potential conflicts of interest in this representation, including the possibility that Ms. Platt will be a fact witness at trial and a conflict in light of her personal, financial interest in the outcome. Moreover, given Ms. Platt's lack of experience in criminal cases, she is not competent to represent a criminal defendant. The Court appointed CJA counsel to address the competency concern. However, Ms. Platt still seeks to remain as counsel for Mr. Briggs in this action, along with CJA counsel. Now before the Court is the issue of whether Ms. Platt's conflicts are unwaivable and whether she must be disqualified. For the reasons stated herein, the Court disqualifies Ms. Platt as counsel for Mr. Briggs.[1]

---

[1] The Court assumes, without deciding, that it would otherwise be appropriate to allow an attorney, who is not on the CJA panel and not associated with one, to represent a criminal defendant *pro bono* along with appointed CJA counsel.

## BACKGROUND

Defendant Isaac Briggs III and co-conspirator Derrick Hodge were charged with wire fraud, conspiracy to commit wire fraud, money laundering, conspiracy to commit money laundering, and aggravated identity theft. *See* ECF No. 9. In essence, the Government alleges that Mr. Briggs and Mr. Hodge defrauded approximately $7 million dollars from investors through soliciting investments for a purported private placement trade program, $5.5 million of which was returned to certain investors and $1.5 million of which was misappropriated. ECF No. 1 ("Compl." or "Complaint") ¶¶ 13–16, 23–24. Mr. Briggs and Mr. Hodge did so by creating a domestic business trust Heritage Integrity Investment Trust ("HIIT"). Through HIIT, Mr. Briggs and Mr. Hodge opened brokerage accounts, received investor funds, and made false promises to induce investments. *Id.* ¶¶ 12–19.

On November 9, 2023, when Mr. Briggs was presented in the Southern District of New York after his arrest, Magistrate Judge Sarah Netburn appointed Kristoff Williams, Esq., of the Federal Defenders of New York as Mr. Briggs's counsel. *See* ECF No. 4. Mr. Briggs was subsequently indicted on five counts by a grand jury. ECF No. 9. In early January 2025, the Government and Mr. Briggs reached a plea agreement. ECF No. 55 at 5. On January 10, 2025, Mr. Briggs appeared before the Court and pled guilty. ECF No. 44.

On February 5, 2025, Mr. Briggs, through Mr. Williams, moved to modify Mr. Briggs's conditions of release to allow him to authorize the Jones Law Firm to act as escrow agent for HIIT, in order to collect debts owed to HIIT and to liquidate HIIT's assets. ECF No. 38. The Jones Law Firm and its attorney Elaine Platt represents Mr. Briggs and HIIT in a civil lawsuit brought by one of the victims of the underlying fraud (the "Victim Lawsuit"). ECF No. 49. During this representation, Ms. Platt prepared and filed affidavits in the Victim Lawsuit, which

the Government alleges contain false statements made in furtherance of the alleged scheme. ECF No. 59. Ms. Platt and the Jones Law Firm also represent HIIT in HIIT's civil lawsuit against Computershare and others (the "Computershare Lawsuit"). *Id.*

After the Court granted the motion to modify conditions, attorney Elaine Platt of the Jones Law Firm appeared for Mr. Briggs as retained counsel, replacing Mr. Williams. ECF Nos. 39, 40. On April 8, 2025, Mr. Briggs through his new counsel Ms. Platt, moved to vacate the guilty plea previously entered on January 10, 2025. ECF No. 51. Mr. Briggs also requests permission to use in the Computershare Lawsuit records that the Government obtained pursuant to grand jury subpoena and produced to Mr. Briggs as discovery in this case. ECF No. 59 at 1–2.

Ms. Platt's representation of Mr. Briggs raises two conflict issues. The first is Ms. Platt's involvement in drafting Mr. Briggs's affidavits in the Victim Lawsuit, where Mr. Briggs is alleged to have made statements in furtherance of the scheme charged in this case. That means Ms. Platt is, at a minimum, a potential fact witness in the criminal trial that would result if Mr. Briggs's guilty plea is withdrawn. If required to testify, Ms. Platt would be disqualified as trial counsel. Second, Ms. Platt has a contingency fee arrangement with Mr. Briggs in the Computershare Lawsuit, which has an alleged potential recovery of $95 million dollars. That money is made up the value of bonds purchased by HIIT with victim funds, meaning the proceedings of this criminal case could impact the amount of civil recovery in the Computershare Lawsuit. Therefore, Ms. Platt has a personal, financial interest in the result of this criminal case.

The Government raised these issues regarding Ms. Platt's representation in a letter to the Court on May 5, 2025. *See* ECF No. 59. Shortly thereafter, the Court scheduled a *Curcio* hearing for Defendant and appointed *Curcio* counsel Glen G. McGorty and Kelly Currie from the CJA

panel to provide separate advice to Mr. Briggs in advance of, and during, the hearing. ECF Nos. 61, 66. The Court also asked the Government to submit a letter describing why it believed Ms. Platt's conflicts here are waivable. ECF No. 61. The Government did so, stating that it does not have information to conclude that Ms. Platt "is implicated in the very crime for which [her] client is on trial." ECF No. 64 at 1.

The *Curcio* hearing began on June 26, 2025. During that hearing, *Curcio* counsel Mr. McGorty raised the issue that even if Mr. Briggs were to waive the conflict, Ms. Platt's representation of Mr. Briggs would still be inappropriate because she could not competently represent him on her own. Ms. Platt acknowledged that she lacked the experience to represent criminal defendants and suggested that she become secondary counsel to an experienced criminal attorney. Ms. Platt then moved this Court to appoint attorney Lydia Lizarribar as CJA counsel for Defendant. ECF No. 77.

Although Ms. Lizarribar is more than qualified to represent criminal defendants, Ms. Lizarribar is not on the CJA panel in this District, has not represented a client in a criminal case in this District, and is not admitted to practice in this District. ECF No. 78. Accordingly, the Court denied the request to appoint Ms. Lizarribar. *Id*.

On July 8, 2025, the Court continued the *Curcio* hearing. In advance of that hearing, the Court asked the Government to again be prepared to discuss the issue of whether the conflicts at issue are indeed waivable. *Id.* Before addressing this issue at the hearing, the Court appointed CJA panel counsel Elena Fast to address the competency concern with Ms. Platt's representation. The Court then heard argument on whether Ms. Platt should remain as counsel, along with Ms. Fast, for Mr. Briggs, or whether Ms. Platt's conflicts are unwaivable and she must be disqualified.

The Government stated its concern that these conflicts are substantial. July 8, 2025 Tr. ("*Curcio* Cont. Tr.") at 7:9–21, 8:13–25, *United States v. Briggs III*, No. 23-CR-644-1 (July 18, 2025), ECF No. 82. In addition to reiterating the nature of the conflicts—the possibility that Ms. Platt will be a fact witness and her personal financial interest in the outcome—the Government noted that these conflicts might open the door for Mr. Briggs to later claim ineffective assistance of counsel. *Id.* at 12:14–20. However, the Government has no objection to Ms. Platt providing advice or information to Mr. Briggs in an informal way, outside the role of an attorney. *Id.* at 19:20–20:14.

Nonetheless, Ms. Platt seeks to remain a part of Mr. Briggs' defense team. *Id.* at 4:5–10. Ms. Platt envisions her role as assisting the CJA attorney, who would be making the important calls. *Id.* at 21:23–22:4. Ms. Platt also stated that she wishes to remain on the team "to be in the information loop in the way that an attorney on the team would be so that [she] can offer any information to [the CJA attorney] at that point that becomes relevant." *Id.* at 22:5–8. She represents that she has "no intention of ever asserting any authority, only assistance, subject to [the CJA attorney's] direction." *Id.* at 26:1–5.

## LEGAL STANDARD

Under the Sixth Amendment, there is a presumption in favor of representation by a defendant's counsel of choice. *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004). At the same time, the Amendment also guarantees a right to "representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). Between these two rights, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Moreover, federal courts have an

independent interest "in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160. When there is an actual or potential conflict of interest, a district court "must determine, in a *Curcio* hearing, whether the conflict requires disqualification of the attorney or whether the conflict can be waived by the defendant." *United States v. Rivera*, 571 F. App'x 55, 60 (2d Cir. 2014). "A court is not required to accept a defendants' waiver of his lawyer's conflict of interest at the expense of" the integrity of process and the government's interest in a just verdict and fair trial. *Id.* (citing *United States v. Arrington,* 867 F.2d 122, 128–29 (2d Cir. 1989)).

Some conflicts are *per se* unwaivable. "We have identified such *per se* violation[s] of the Sixth Amendment where the defendant's counsel was unlicensed, and when the attorney has engaged in the defendant's crimes." *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019) (internal citations and quotation marks omitted). "But, beyond the 'always' category, there is also a 'sometimes' category." *United States v. Vertuccio*, No. 15-CR-174 (ENV), 2017 WL 6513676, at *3 (E.D.N.Y. Dec. 19, 2017). That "sometimes" category includes concerns based on a court's independent obligation to ensure "that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* (citing *Wheat*, 486 U.S. at 160). Courts "retain at least some discretion to disqualify counsel even where the law does not absolutely require it—discretion to entertain those situations that fall into the 'sometimes' category." *Id.* And courts should exercise this discretionary disqualification when an attorney's conflict is so serious that "no rational defendant would have knowingly and intelligently desired the conflicted attorney's representation." *Arrington*, 941 F.3d at 40 (cleaned up and citing *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003); *United States v. Cain*, 671

6

F.3d 271, 293 (2d Cir. 2012); *United States v. Schwarz*, 283 F.3d 76, 93 (2d Cir. 2002); *United States v. Fulton*, 5 F.3d 605, 612 (2d Cir. 1993)).

Moreover, a district court is "allowed substantial latitude in refusing waivers of conflicts of interest where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial processes." *United States v. Elder*, 311 F. Supp. 3d 589, 595 (E.D.N.Y. 2018) (cleaned up). "Federal courts' independent interest in ensuring that criminal trials are ethical and fair, coupled with the potential for gamesmanship on the part of the defendant who waives a conflict only to later claim ineffective assistance, necessitates affording the district courts broad latitude in refusing conflict waivers." *Id.* (cleaned up and citing *Cain*, 671 F.3d at 294 and *Wheat*, 486 U.S. at 160).

## DISCUSSION

This case presents the rare instance in which the potential conflicts as a whole, along with Ms. Platt's lack of competence, are so serious that "no rational defendant" would "knowingly and intelligently desire" her representation. *Arrington*, 941 F.3d at 40.

The first potential conflict arises from Ms. Platt's potential involvement in Mr. Briggs' conduct and her role as a potential witness. The Government alleges a conspiracy between August 2020 and November 2023 to commit wire fraud. *See* Compl. ¶ 1. Specifically, Mr. Briggs and Mr. Hodge (collectively, "Defendants") allegedly obtained investor funds under false and fraudulent pretenses, then continued to make false statements to investors about how those funds would be used. *Id.* ¶¶ 13–19. Defendants allegedly fraudulently obtained about $7 million and misappropriated about $1.5 million of investor funds. *Id.* ¶ 23. The Government contends that Mr. Briggs made additional statements in furtherance of the fraud in affidavits prepared by Ms. Platt, and that these affidavits "were used as a tool to deceive the investors and the victims in this

7

charged case." *Curcio* Cont. Tr. at 9:25–10:6. In other words, setting aside the strength or lack thereof of the Government's case, "[Ms. Platt] acted in such a way that [her] conduct is now intertwined with that of [Mr. Briggs] with respect to the time period" during which the affidavits were prepared. *Elder*, 311 F. Supp. 3d at 596 (finding that because the conflicted attorney "may have been involved in misconduct that may be the subject of evidence" that case, that attorney "plainly ha[d] his own interest in this case—an interest in not having anything come to light that might further complicate his personal situation") (internal citation omitted).

The Second Circuit has found that the similar circumstances give rise to unwaivable conflicts. In *United States v. Jones*, the district court found that the defendant's attorney had an unwaivable conflict where there was a possibility that the attorney would become a target of the grand jury's investigation, and at a minimum would be called to testify against the defendant. 381 F.3d 114, 117–18 (2d Cir. 2004). The defendant argued on appeal that the district court erred by not allowing a waiver. *Id.* at 118. The Second Circuit disagreed, affirming the district court's ruling and holding that "[t]he risk that [the defendant's attorney] would become a witness at trial was enough alone to allow the district court to [disqualify him] under an abuse of discretion standard." *Id.* at 121. Likewise, in *United States v. Cain*, the district court disqualified the defendant's attorney and refused a waiver due to the risk that the attorney would be called as a grand jury witness. 671 F.3d 271, 292–93 (2d Cir. 2012). The Second Circuit affirmed, finding that the risk of the attorney becoming a witness against his client was sufficient to justify the district court's decision. *Id.* at 295–96.

The facts in the instant case are distinguishable from those where the Second Circuit has found the risk of the attorney becoming a witness to be a waivable conflict. For example, in *United States v. Perez*, the defendant, after two separate *Curcio* hearings, waived his right to

8

conflict-free representation and was subsequently convicted at trial. 325 F.3d 115, 119–24 (2d Cir. 2003). On appeal, the defendant argued that his right to effective assistance of counsel was violated because his attorney suffered from an unwaivable conflict of interest. *Id.* at 124. The Second Circuit disagreed and held that the district court acted within its discretion by allowing the waiver. *Id.* at 129. The court rejected the defendant's argument that his attorney should have been disqualified as a potential trial witness because any possibility of the attorney testifying was eliminated well in advance of the trial. *Id.* Here, although the Government has not indicated it intends to call Ms. Platt as a witness, that possibility has not yet been eliminated.

Furthermore, as Ms. Platt herself insists, she possesses first-hand knowledge of her client's conduct during the alleged fraud. *See Curcio* Cont. Tr. at 21:1–6 ("He is an innocent man, and I know this because I watched for two years how he made every effort to try and set up the trading account that he's accused of never having intended to set up. So, I have a firm conviction, not based on what he's told me, but based on what I've observed . . . ."). Such a claim renders Ms. Platt a potentially key witness in this case—either as part of Mr. Briggs' defense (a defense he would be potentially waiving if she were to represent him) or for the Government.

Moreover, "the relationship between [Ms. Platt] and Defendant appears to be rife with conflict no matter the substance of [Ms. Platt's] testimony." *United States v. Gosy*, No. 16-CR-46 (FPG), 2017 WL 1963580, at *5 (W.D.N.Y. May 12, 2017). If Mr. Briggs knowingly made false representations in the affidavits prepared by Ms. Platt, Ms. Platt's "professional obligation to act in [her] client's best interest [could] be compromised by [her] obligation to offer truthful testimony under oath." *Id.* Or, if Ms. Platt was involved in knowing misrepresentations in the affidavits, her "obligation to act in [her] client's best interest would be compromised by [her]

9

interest in protecting [her] own professional reputation." *Id.* (citing *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993) (explaining that an attorney with first-hand knowledge of the events presented at trial "may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client")). In light of Ms. Platt's admitted knowledge and involvement here, the Court has significant concerns about Ms. Platt's role as a potential witness in this case and about her ability to represent Mr. Briggs in a manner consistent with her ethical obligations.

The second conflict at issue is Ms. Platt's significant financial interest in this case, given her contingency fee arrangement in the Computershare Lawsuit. Ms. Platt is not being paid an hourly rate in the Computershare Lawsuit. Instead, she has a contingency fee arrangement with Mr. Briggs and will receive one-third of any recovery Mr. Briggs receives in that action. If the civil case were to succeed and Mr. Briggs were to recover his fully requested amount—$95 million—Ms. Platt stands to receive over $30 million. *Curcio* Cont. Tr. at 16:11–15. Ms. Platt, therefore, has a significant, personal interest in the outcome of this case.

Indeed, Ms. Platt's financial interest and general interest in that civil case conflicts directly with legal choices that Mr. Briggs already made through competent counsel to plead guilty. *See Curcio* Cont. Tr. at 13:25–14:25. Here, there may be an actual conflict of interest between Ms. Platt's desired course of action (withdrawal of the guilty plea which harms the civil case) and what Mr. Briggs did here already in pleading guilty (setting aside the issue of whether the plea is one that can or will be withdrawn). *See United States v. Perez,* 325 F.3d 115, 125 (2d Cir. 2003) ("An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action.") (internal citation omitted). However,

10

even if the Court were to find that there is no actual conflict here in light of Mr. Briggs's request to withdraw his plea, Ms. Platt's financial interest remains significant. *See*, *e.g.*, *United States v. Schwarz*, 283 F.3d 76, 96–97 (2d Cir. 2002) (finding unwaivable a conflict involving a financial interest in a $10 million retainer fee for the representation of a union).

Finally, as discussed in the previous Order at ECF No. 78, Ms. Platt is not competent to represent Mr. Briggs without associating with competent criminal counsel. The multiple potential conflicts that are likely to materialize, along with the competency concern as an additional factor, substantially implicate the Court's interest in ensuring a fair trial and warrant disqualification. *See, e.g.*, *United States v. Rivera*, 571 F. App'x 55, 60 (2d Cir. 2014) (disqualifying an attorney where potential conflicts arising from her prior representation of co-defendants and potential witnesses were sufficiently likely to materialize, combined with the fact that the attorney shared an office with counsel who previously represented other co-defendants). Moreover, even if Ms. Platt's involvement would not prejudice Mr. Briggs himself in anyway, Ms. Platt would still be disqualified because "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted with the ethical standards of the profession and legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988); *see also Gosy*, 2017 WL 1963580, at *8 (noting that for this same reason, the conflict counsel "would still be disqualified even if it could be guaranteed that his involvement in the case would not prejudice [the defendant] himself in any way").

Lastly, although not expressly a factor, the Court considered that there is no harm to Mr. Briggs by this decision. Mr. Briggs now has competent criminal defense counsel representing him. And nothing bars Ms. Platt from communicating with Ms. Fast and providing all of the information she has that is relevant. Nothing bars Ms. Platt from receiving appropriate updates

11

from Ms. Fast as counsel sees fit. *See Gosy*, 2017 WL 1963580, at *8 (noting that any harm to the defendant is minimal where defendant has retained competent criminal defense counsel and conflict counsel is not barred from exchanging information with said criminal defense counsel). The Court sees no practical benefit to Mr. Briggs in allowing Ms. Platt to stay on as counsel—certainly none that can outweigh the Court's concerns regarding ethical standards, the conflicts at issue, and the appearance of fairness.

## CONCLUSION

For the foregoing reasons, Ms. Platt is disqualified as counsel for Mr. Briggs. With this issue addressed, the Court relieves Mr. McGorty and Mr. Currie and thanks them for their work on this matter.

By September 5, 2025, the parties are directed to confer regarding the status of this matter and file a joint letter regarding proposed next steps. The letter shall include whether Mr. Briggs, after conferring with Ms. Fast, intends to move forward with his previously-filed motions, including the motion withdraw the guilty plea and the motions to amend the protective order.

Dated: July 28, 2025
       New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge